Good morning. Assistant Federal Public Defender Gail Ivins appearing this morning on behalf of Petitioner Appellant John McIntyre. I want to begin this morning by addressing Respondent's argument on what the appropriate offensive conviction would have been had the evidence been introduced. By referring this Court to the Respondent's Supplemental Excerpt of Record 1048, 106263, 6566, and 1075, which are the jury instructions that discuss the admission of the voluntary intoxication evidence when specific intent is required and what the jury would have been considering and in connection with which counts of conviction. And in reviewing that it's clear, as I stated, that the voluntary intoxication evidence would have been admissible on the issue of specific intent as to the murder one, murder two, and the voluntary manslaughter. And also, importantly, to the enhancement, the 12022 enhancement, which was the, you know, use of a firearm that resulted in death. Counsel, we do have what I, what appears to me to be a possibly serious problem with this matter, and that is the district court certified in the COA a single issue for appeal. And I read it, whether habeas relief is warranted under 28 U.S.C. 2254d with respect to Petitioner's claim that he received ineffective assistance of counsel when his trial counsel failed to investigate, prepare, and present a diminished capacity defense through expert testimony. As you probably know, California abolished that defense, and so there's a defect in the Certificate of Appeal. Your Honor, I would request that the court consider treating that as a clerical error and looking at it as diminished actuality, which was clearly what was discussed at length in all of the briefing. Clerical error? Diminished actuality? That diminished actuality, which was the only defense now allowable under Penal Code Sections 22 and 29 in all of the California case law, was what all of the briefing was addressed to, was what the district court discussed in the report and recommendation. How is this a clerical error? Well, if it's not a clerical error, inserting the word capacity in lieu of the word actuality, I think that for people who have been practicing for a very long time Well, so are you asking us to fashion a new Certificate of Appeal sui spanae on our own motion? I don't think that the district court had any jurisdiction or authority to grant a certificate if it was diminished capacity, because that defense did not exist. So we don't have a Certificate of Appeal to work with then? Well, if the court would either remand to the district court for him to correct the error, I'm sure that Magistrate Judge Block meant actuality. I think it's clear from the record if this court either The magistrate judge got it right in a footnote referencing the fact that diminished capacity had been violated. I'm not trying to play ticky-tacky with details here, but would you like us to refashion on our own motion, sui spanae, a Certificate of Appeal that covers something other than diminished capacity? Yes, Your Honor, I believe that would be fully supported by And exactly what would you like us to, how would you like us to make it read? Diminished actuality, Your Honor. Diminished actuality. Which I believe is the recognized defense under California law. And is that referred to in your brief, diminished actuality? I don't know if I used that term, Your Honor. I don't remember you using it. That doesn't mean you didn't. I mean, this sounds like a lot of ticky-tacky stuff, but Congress has been pretty specific on these things, and we need to follow the law. In my brief, I believe that I went past the sort of colloquial or case definition and just talked about the standard in the law, which is diminished actuality being that the voluntary intoxication defense can no longer be used to show that you did not have the capacity to form the intent, but rather that you did not actually form specific intent. And I believe that I discussed it in those terms in my briefing. Does the Certificate of Appealability, even as amended by the proposed corresponding amendment which you proposed, also allow us to consider the defense of the accident defense as ineffective assistance of counsel to the extent that it relies on alcohol? That's a very good point, Your Honor. And I think the answer is no. Yes, I think that my request then would be to the extent that the Court is willing to consider it, that the certificate be amended, if the Court is comfortable doing that, to state the way I have stated it in my statement of the argument. So alcohol and accident then goes out the window. I mean, the reason this is jurisdictional, that's why. Yes, Your Honor, it is. And it's a very good point. And perhaps the Court would allow me some time to think about it quietly and to submit a letter brief to the Court very briefly with my suggested language. I do know that the Court has recently held, I believe it's this Court, that a magistrate judge actually does have jurisdiction to issue a Certificate of Appealability. So to the extent that the magistrate judge used the correct language and I can review that and suggest something to the Court, I would like time to review that. Do you need more than 10 days? No, Your Honor. Do we agree to that? I suppose that's all right, but it sort of puts us at sea a little bit on the argument today. Well, let's suppose for the purposes of argument that we smile beneficially upon you. Thank you, Your Honor. And change the COA to include both diminished actuality and the accident defense. So proceed upon that basis. Yes, Your Honor. If the COA were to include both of those, the Court only addressed the prejudice prong of Strickland in its report and recommendation and then in the adoption of that. I have asked the Court to look at the complete record in terms of the first prong of Strickland, which is the reasonableness of counsel's investigation, his failure to retain an expert, his failure to understand the law as it applied to the defense, and the reasonableness of him presenting only sort of a half-baked accident defense rather than the more complete defense and complementary defense of both voluntary intoxication and the possibility of accident. But wasn't that a tactical decision of counsel, figuring that the way that McIntyre held his liquor, the way that he went into a briefcase, got the gun out, walked down the stairs, walked out to the car, held the gun down his side, pointed the gun first at Joyce, then at Louie, then shot Louie, then put the gun down, as witnesses said, indicated that he was not exactly bereft of the ability to deliberate and mark his steps? I think that the Court's... Accident sounds better than diminished actuality under those circumstances, doesn't it? The evidence of the single action versus the not single action, I'm not a gun expert, but the fact of how much he had to push it or not push it... 4.5 pounds. Thank you. I just thought that the rebuttal on the accident issue by the people was certainly a rebuttal, and that given the testimony that we now have, the fact that cognition can be impaired even when motor skills appear unimpaired, and that that is something that possibly is not obvious to a lay person or to a jury, that expert testimony given to this jury, a jury who was with very little evidence in the record, concerned enough that they asked about that evidence... I like the expert talking about executive function. He had a lot of very helpful information in his testimony in terms of cognition as well, Your Honor. I think that in this case, with all of that evidence, had that evidence been before this jury who clearly saw that there was an issue with regard to whether he was or was not so drunk that maybe his cognition was impaired and he couldn't have formed the specific intent that they were directed to find, that that evidence on the facts of this case is exactly what defense counsel needed to present in order to prevent a murder verdict, which is what occurred in this case. Ms. Ivins, you make a good argument as to deficient performance and not presenting the blood alcohol result of 1-7 and then have an expert bring it back to the time of the act. I think the witness would have said it was 2-9, which is really high. But how do you, and I think this really gets to what Judge Bea was saying, how do you get over the prejudice, even if we were to assume that there was deficient performance, both as to the first-degree murder charge and the intent to kill and as to the accident theory, we say okay, we'll go into all of that, we assume there was deficient performance, but how do you satisfy the prejudice problem in light of those circumstances that Judge Bea mentioned? I see that my time is up, but I would ask permission to respond. You're allowed to answer the question. Thank you, Your Honor. Your Honor, the standard, once we get to that point, if we get to that point, once we're there, the standard for prejudice is not actually as high a standard as many of the other standards habeas petitioners have to meet. It's whether you have confidence in the outcome. Is there a reasonable probability that had the correct thing been done, the outcome would have been different? It's less than preponderance. What was the client's position on this with the lawyer? The client's position on this with the lawyer prior to trial? Yes. I don't know that that's in the record, Your Honor. Well, doesn't counsel say that the client was adamant about what the defense should and should not be? I'll have to check that, Your Honor. I'm not sure that that, whether the client did not, I don't believe the client said he did not want an expert to testify or did not want to be examined by an expert. He claimed it was accident. He was adamant that it was an accident, but his testimony in that regard, Your Honor, is, if I may say so, not something I would have been comfortable presenting as defense counsel in a murder case without some sort of supporting evidence that it could have been an accident because we have, as several of Your Honors have summarized, a fairly compelling case that he was acting somewhat deliberately, it appeared. It appeared that he was acting somewhat deliberately. And in terms of the outcome, the prejudice prong, I think we have in this case some unique facts. One, that the prosecution did point to the absence of this testimony. Yes. In their closing argument. And I think that that's a fairly distinct fact in our case that possibly doesn't exist in some other cases. And the other is the jury's question. And the jury was clearly concerned, based on the evidence that they had heard, that seemed to them a relevant fact and they wanted to know what was the blood alcohol level. Do we know that? And they were told, no, you don't. It was stricken. Don't consider it. McIntyre told Schwerin that he didn't think he was drunk. That's in the excerpt of record at page 137. Ms. Ivins, your time has expired. Yes. We'll give you a couple of minutes to rebuttal because of the severe questioning you received on the certificate of appealability. Thank you. Especially from Judge Bayen. Morning. May it please the Court. Deputy Attorney General Mike Johnson on behalf of Respondent. To just address the last issue that was discussed, I think not only did it appear that he was very deliberate in this case, I think we have out of the defendant's own mouth that he was very deliberate in this execution-style murder, essentially. He said he was moderately drunk. Was that the word, moderately? I think the record can fairly be read that he was pretty insistent that he was moderately drunk in consultation with counsel. Yeah. As well as I think his statements to the police as soon as he was arrested indicated that this was really an intent to scare the victim. I think that in itself, his own admission that he could form that intent to scare, that alone virtually torpedoes any kind of voluntary intoxication defense. I think as the Court has focused in on, that defense is an extraordinarily narrow one under California law. The defendant would have to show that he was actually unable to form a specific intent. On this record, I think it was entirely reasonable for the state court to have found not only that the Strickland claim fails the prejudice problem, but I think this is a good example of a case where the so-called overlapping occurs, where the same reasons why this defense wouldn't have been viable and therefore there wouldn't have been any prejudice informed counsel's decision as to why not to raise this defense in the first place. That's why I think it was entirely reasonable for counsel, for example, not to press the issue of the blood alcohol test. I think Petitioner would like to say that all counsel had to do was get in this evidence of the .17 and that would have swayed the jury, but I think that's only half the story. I think that in order to get that evidence in, a lot of other baggage, so to speak, would have had to come in as well. I think what the court actually ruled in this case was the reason it was excluded was because defense counsel didn't have the appropriate witness there to explain this blood alcohol test. In other words, there would have had to have been some discussion beyond just the number itself. The jury would have had to have heard testimony about concepts like tolerance, which clearly would have been a big issue in this case. So as the state court said, we're sort of getting into the realm of speculation there, and I think the Strickling claim fails. Tell me about that tolerance. So I thought they would have to not only put in that you had a 176 hours after the event, was it? Approximately, I believe, yes. But they'd have to put somebody in to back that up then and say, so at the time of the event, it must have been somewhere between 2-5 and 2-9. Exactly. Well, the expert said it would have been 2-9, I think. Exactly. In the district court. But you're saying that then even if all of that came in, then you'd have to have evidence as what can a person do that's got a 2-9, and what effect does tolerance have, and what kind of tolerance did this fellow have, and you would have got into all of that. Exactly. Is that what you're saying? Exactly, because, again, the number by itself isn't particularly relevant, if at all. What's relevant is the defendant's mental state in this case. I think whether we're talking about a full-blown voluntary intoxication defense or whether we're talking about the mistake defense, I want to stress, however, that I don't think ineffective assistance of counsel based on the mistake defense alone is really included in the claim here. I think this has been litigated all along as simply an issue of voluntary intoxication. Now, I don't think it will surprise the court to hear that I agree. What you mean by mistake is what we term accident, right? Accident, yes. I think the terms accident, mistake were used somewhat interchangeably here in the district court, as were the terms, and I think this is where the problem arose with the certificate of appealability. The term diminished capacity was really sort of used as a proxy for what I think everybody was discussing, which was a voluntary intoxication defense. And we did certainly point out in the district court that, of course, diminished capacity doesn't exist any longer in California. So I would agree with it. Diminished actuality is a defense. If the jury finds that he, in fact, did not form the specific intent, did not deliberate, that would reduce the degree of the crime. Yes, it is, Your Honor, sometimes referred to as diminished actuality. And I guess that's the same thing I'm referring to as a voluntary intoxication defense, just to be particular about these statutes in California. And, of course, intoxication does help in selling the accident defense, doesn't it? Yes. Again, I want to point out that I don't think that's the claim that was litigated in this case, be that as it may. It's not in the COA, as we get it, either. It's certainly not in the COA. I agree with that. But to answer the court's question, I think the problem with intoxication defense, even in the context of the accident theory, is essentially the same one. It's essentially the same problem that arises in the context of the voluntary intoxication defense, which is that we have a record here that shows, undoubtedly, that Petitioner was very deliberate in his actions and his thoughts leading up to this execution-style murder. You don't buy into the segregation between mechanical actions and cognition? I don't here, Honor. And I don't think that Petitioner's expert was able to explain that theory in a particularly coherent way in the district court. In fact, I think the major problem with Petitioner's expert's testimony was his entire theory of how alcohol affects a person's What he explained was alcohol, in fact, does not prevent somebody from forming an intent. What it does is it removes a person's inhibitions to act on that intent. I think that presenting that kind of testimony in this case could even be said to have been ineffective in itself. To present an expert that would sort of give away a prong of the defense like that. You know, it tends to maybe support the accident theory. It sort of does away with the lack of intent to kill when your expert says, well, yeah, he could have had the intent to kill. I agree with that. Would have had the intent to kill, I guess, is what he said. There's an aspect of this case that troubles me somewhat. And that is that the case seems to get better as we go along, meaning things are added to the record that weren't there in the state. If you look at the California Court of Appeal, California Court of Appeal says council made a tactical choice to focus on the defense of accident rather than an intoxication. This was a rational choice, et cetera, et cetera. But then the court says, additionally, reversal is not proper as appellant has not met his burden to show prejudice. We do not know what an expert would say as to the level of appellant's intoxication at the time of the crime or its possible effect on appellant's ability. Thus, we cannot conclude. We refuse to accept the suggestion that expert testimony on the effects of alcohol has become generic. So it seems to me that no attempt was made in the state court to build a record on this issue. I absolutely agree with that, Your Honor. So if there's no record, given the deferential standard of review, how can we say this is unreasonable, wrong, you know, all the usual labels that we have to attach to this? Certainly it comes over to federal court and all of a sudden all this stuff appears. But these kinds of do-overs aren't favored by the law, are they? Absolutely not, Your Honor. That is certainly our position. Often we see in cases like this an expansion or an amplification of the claim once we arrive in federal court. I think it's clear that Congress's mandate under the ADPA. So you can develop facts in the court, but the facts have to be established by clear and convincing evidence that the state court's factual finding or analysis in some way is either wrong or unreasonable. And it just seems to me that it's not appropriate to keep adding things to the record when that opportunity was there at the state level and it wasn't done. I agree with that. I would modify that a little bit by saying that it's appropriate to develop facts in federal court only in very rare cases. I think in the vast majority of habeas cases from state prisoners, what Congress had in mind was that the state court would resolve these things. I think 2254E2 requires that petitioners develop their claims in state court. This isn't new information that couldn't have been developed or new evidence that couldn't have been found. Exactly. And I think for that reason, petitioner was required to have developed this in state court. And that's why I think, as I've stated in my briefing, the only question that matters, as the Supreme Court has said, is whether the state court adjudication was reasonable on the record the state court had before it under 2254D. And I think that that isn't really even a close question in this case. Of course, I think the question of the standard of review is ultimately basically academic here, because I think the federal court facts, so to speak, only bolstered the state court's, the reasonableness of the state court's decision. Time has expired. Thank you, Mr. Chairman. Thank you. Ms. Ivins, you have a minute. In reverse order, then, Your Honor, this was not a do-over. As detailed extensively in my reply brief, Mr. McIntyre did make all of those attempts in his habeas petitions, which were denied on the basis that the issue had already been decided against him. And that's why it's quoted from Catch-22 in my briefing. I'm not following that. Educate me. When the court of appeals says there's nothing in the record that suggests this, what does that indicate? He said you have to file a writ. That's what the citation to People v. Pope means, and I've discussed that at length in my reply brief. And then I've gone through and detailed where he filed those writs, the requests he made for discovery, the requests he made for the hearing, and he was stopped at every juncture from getting to that point. Why? On the basis that it had already been decided by the California Court of Appeal. So after the California Court of Appeal said it's not here, then you decided to do it over. No, it was not a do-over, Your Honor. He was represented by counsel on a direct appeal who raised this issue. I mean, there's no requirement that you file the habeas petition concurrently. And added all these facts involving what an expert would say and what that testimony meant? What happened in the court of appeals decision, because they were limited to the record, is that they looked at case law where, you know, a voluntary intoxication was discussed and tried to argue. I don't know if I would have, but they tried to argue that, therefore, you can sort of just generically grab the expert testimony from some other case law and import it into our case. And on that basis, you have enough evidence, court of appeals, to make the decision that my counsel was ineffective. The court of appeals, I think correctly, declined that invitation and said, no, we can't do that. If there are facts outside the record, like an expert opinion on you, that needs to come to us in a writ. And so he filed writs attempting to get that type of evidence, asking for that kind of discovery, asking for an evidentiary hearing where he could develop that, and he was denied that opportunity by the California courts. What court? The California courts. Which one? The excerpt of record volume three includes most of these petitions. They were attached to the Respondent's answer, I believe, or motion to dismiss. Was it the superior court, the court of appeal, the supreme court? I believe he applied to the superior court and the court of appeals, Your Honor, but I don't want to misstate the record, so I would need to check that. Okay. Going in reverse order, this issue about cognition versus motor skills and tolerance, the attorney general was invited by the district court and asked several times, are you going to present an expert? And they declined to do that. So the evidence that was developed in the district court is the expert testimony that was presented by petitioner, and now we're engaged in Respondent now speculating about what their expert might have said or what evidence might have been developed, and I think that that's inappropriate and this Court should not accept that invitation to help Respondent speculate on evidence they chose not to present in the district court. All right. You've exhausted your time. Ms. Ivins, the Court will give you 10 days from today to write a letter to the Court in which you should suggest precisely the language for the certificate of appealability which you wish this Court to sua sponte adopt, and any case reciting our authority to do so. Thank you, Your Honor. Thank you.
judges: Thompson, Trott, Bea